UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RHONDA DAHLMAN, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN ASSOCIATION OF RETIRED PERSONS (AARP), *et al.*, <br><br> Defendants. | Civil Action No. 09-2087 (BAH) <br> Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Rhonda Dahlman alleges that her former employer, the American Association of Retired Persons (AARP), and her former supervisor at the AARP, Jan May, discriminated against her in violation of the Americans with Disabilities Act (hereinafter "ADA"), violated provisions of the Family and Medical Leave Act (hereinafter "FMLA"), and also intentionally caused her emotional distress. The defendants have moved to dismiss, arguing that the plaintiff failed to exhaust her administrative remedies before filing her ADA claim, and that all her claims are time-barred under the applicable statutes of limitations. The plaintiff concedes that her claims were filed outside the statutes of limitations, but nonetheless requests the Court to toll the limitations periods on equitable grounds and effectively waive the exhaustion requirement because the plaintiff allegedly suffered acute post-traumatic stress disorder (hereinafter "PTSD"), which prevented her from bringing this action in a timely manner. Despite plaintiff's alleged medical diagnosis of PTSD, the plaintiff has not demonstrated that she was *non compos*

1

*mentis*, and is therefore not entitled to equitable tolling or waiver. Accordingly, for the reasons set forth below, her claims are dismissed.

I.  BACKGROUND

In 1999, plaintiff Rhonda Dahlman was hired by the AARP as an attorney in the AARP's Legal Counsel for the Elderly division. Compl. ¶ 10. According to the plaintiff, because of her "diligence and competence," the plaintiff was assigned a disproportionate share of the litigation caseload in her office, given assignments on tight deadlines, and by 2005, had a caseload "quantitatively larger" than her co-workers. *Id.* at ¶¶ 9-17.

In November 2004, the plaintiff approached her supervisor, defendant Jan May, and informed him that she was planning to leave her job in the spring of 2005 and move to Canada. *Id.* at ¶¶ 18-19. At defendant May's request, the plaintiff agreed to take a transitional leave of absence rather than resign. *Id.* at ¶¶ 19-20.

Shortly after the plaintiff agreed to take a leave of absence, the plaintiff claims that defendant May "began a campaign of hostility, ridicule and intimidation of [the plaintiff] that caused her to suffer severe emotional distress." *Id.* at ¶ 21. These acts of harassment were "mainly conducted in private, but on numerous occasions, [defendant] May acted to humiliate [the plaintiff] in the presence of her peers and colleagues." *Id.* at ¶ 22. Specifically, the plaintiff alleges that defendant May ridiculed the plaintiff for wearing a baseball cap to work and openly accused her of being an alcoholic and a substance abuser. *Id.* at ¶¶ 24-25.

In July 2005, the plaintiff began a four-month transitional leave of absence. The week before this leave began, the plaintiff alleges that defendant May unfairly reprimanded her for not working many hours. *Id.* at ¶ 23. In addition, the day before the plaintiff began her scheduled leave of absence, defendant May allegedly "stripped [plaintiff] of her duties as Coordinator of

the Alternatives to Landlord/Tenant Court as well as her Court-Ordered, D.C. Superior Court Probate Reform work, the very work for which [plaintiff] agreed to take a transitional leave of absence." *Id.* at ¶ 26.

The day before the plaintiff was to return from her scheduled leave, in October 2005, the plaintiff claims that defendant May "had his office manager call [the plaintiff to] threaten her." *Id.* at ¶ 29. This caused the plaintiff to suffer an "emotional breakdown such that whenever she even thought of the AARP or [defendant] May she began to cry uncontrollably and suffer completely dissociative behavior." *Id.* at ¶ 30. The plaintiff was "unable to function," could not go to work, and "lost the ability to care for herself, such as bathing and other personal hygiene matters, cleaning or eating regularly." *Id*. at ¶ 31. The plaintiff further alleges that in October 2005, "when [she] returned from her leave of absence," she informally complained to the AARP about defendant May's actions and "requested assistance from AARP to protect her from further abuse." *Id.* at ¶ 28. The AARP, however, refused her request. *Id.*

On November 9, 2005, the plaintiff sought psychiatric treatment and was diagnosed with "acute post-traumatic stress disorder." *Id.* at ¶¶ 32-33. The plaintiff's psychiatrist recommended that she not attempt to return to "the physical premises" of the AARP, but instead work from home on "non-litigation projects, such as the book chapter [the plaintiff] was working on for the American Bar Association." *Id.* at ¶¶ 16, 34. At some unspecified time after meeting with her psychiatrist, the plaintiff requested the AARP to allow her to work from home on non-litigation writing projects during her recovery. The AARP refused and "instead of allowing [the plaintiff] to work from home, or providing her with another supervisor, Defendant AARP placed [the plaintiff] on temporary disability." *Id.* at ¶¶ 35-36.

The plaintiff alleges that during the time she was on temporary disability, she completed writing her book chapter for the ABA, but the AARP "refused to provide [her with] editing support" and "refused to submit [her] chapter to the ABA in a timely manner." *Id.* at ¶ 37. The AARP further refused her request to be "reasonably accommodated within the context of her internal grievance" against defendant May, and fired the plaintiff "because of her disability and without providing [the plaintiff] an opportunity to gather her belongings." *Id.* at ¶ 38.

Following the plaintiff's termination from the AARP, the plaintiff alleges that the AARP withdrew money from her checking account without informing her and also refused to inform T. Rowe Price, an investment company, of the plaintiff's new address, which caused her "not to receive her account statements at a time when the money markets were in great financial distress." *Id.* at ¶ 39. The plaintiff further states that even after she left the AARP, defendant May continued to "exhibit hostility" toward the plaintiff. *Id.* at ¶ 40. Defendant May allegedly failed to secure the plaintiff's personal belongings from her office, causing her to lose some of her personal artwork, and also attempted to disrupt the plaintiff's immigration to Canada. *Id.* at ¶¶ 40-41.

The plaintiff states that the symptoms of her PTSD "have continued more or less unabated" and only since April 2008 has she been able to "function effectively so that she can care for herself, and leave her home and attempt to take care of her business affairs." *Id.* at ¶ 42. Moreover, the plaintiff states that when she first "attempted to [] invoke her legal rights" in 2008, she "discovered that [defendant] May had forged two emails under her name."[1] *Id.* at ¶ 43. This caused her to "suffer a relapse, and she had to abandon all efforts to vindicate her rights." *Id.*

---

[1] The plaintiff provides no further information about the alleged forged emails, such as the dates on which the emails were sent or discovered, or the contents of the emails.

On November 5, 2009 – according to the defendants over three years after the plaintiff was fired from the AARP – the plaintiff filed a Complaint alleging that defendants AARP and Jan May violated the American with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ECF No. 1. The plaintiff also suggests, but does not specifically list as a cause of action, a common law claim of Intentional Infliction of Emotional Distress (hereinafter "IIED") against defendant May.[2] For these alleged unlawful acts, the plaintiff seeks $300,000 for mental anguish and emotional distress, punitive damages, and back pay and other wages to "make Plaintiff whole" for the discrimination she suffered. Compl., Prayer for Relief ¶¶ 3-4.

On March 26, 2010, the defendants filed a motion to dismiss the plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing, *inter alia*, that the plaintiff failed to exhaust her administrative remedies with regard to her ADA claim, and that the Complaint is "time-barred in its entirety under the applicable statutes of limitations." Defs.' Mot. Dismiss, ECF No. 3, at 1. Having considered the defendants' motion, the briefs submitted in opposition and in support, as well as the applicable law, the Court agrees that the plaintiff's claims must be dismissed.[3]

---

[2] The plaintiff alleges an IIED claim in paragraphs 2 and 4 of her Complaint, under the "Jurisdiction and Venue" heading. Paragraph 2 of the Complaint declares that the plaintiff "also states a cause of action under the District of Columbia common law against Defendant Jan May because of Defendant May's outrageous conduct and intentional infliction of emotional distress." Compl. ¶ 2. The plaintiff does not delineate an IIED claim under the "Statement of Claims" section of her Complaint, which only asserts her ADA and FMLA causes of action, nor does the Complaint otherwise reference her IIED claim outside paragraphs 2 and 4. The defendants argue that the Complaint "does not properly set forth the tort of IIED." Defs.' Mot. Dismiss, at 11. The Court assumes, *arguendo*, that the Complaint sets forth an IIED claim to consider the defendants' argument that this claim is time-barred.

[3] The Complaint does not set forth the specific dates on which the defendants allegedly (1) refused to allow the plaintiff to work from home and provide editing support, (2) denied plaintiff's request for FMLA leave, or (3) terminated the plaintiff. These dates would be relevant in determining whether the plaintiff's claims are barred by the applicable statutes of limitations. The plaintiff, however, does not dispute the defendants' contention that all of her claims were untimely filed. Although the defendants provide dates associated with some of the plaintiff's allegations in a declaration attached to their motion to dismiss, given plaintiff's concession that her claims were filed outside the statutes of limitation, this information is not essential to the disposition of the case. Accordingly, the

## II.     STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *accord Atherton v. District of Columbia Office of the Mayor,* 567 F.3d 672, 681 (D.C. Cir. 2009). Although detailed factual allegations are not required, the complaint must set forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal,* 129 S.Ct. at 1949, and may not merely state "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555.

While the court "construes the complaint liberally in the plaintiff's favor," *City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949.  The court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint," nor must the court accept "legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Moreover, the plaintiff must demonstrate more than the "sheer possibility that a defendant acted unlawfully." *Iqbal,* 129 S. Ct. at 1949. The Court must therefore engage in a "common sense," "context-specific" examination of the pleading to determine whether a complaint states a plausible claim for relief. *Id.* at 1950; *see also Twombly*, 550 U.S. at 557, 570.

---

Court need not consider the defendants' declaration and thus need not convert the defendants' motion to dismiss into a motion for summary judgment pursuant to FED. R. CIV. P. 12(d) and 56.

### III. DISCUSSION

The plaintiff asserts three causes of action against the defendants. First, she claims that the defendants violated the ADA, 42 U.S.C. § 12101, *et seq.*, when they denied the plaintiff's request to work from home on her book chapter for the ABA and failed to submit the completed chapter in a timely manner. Compl. ¶¶ 44-46. Second, the plaintiff alleges that the defendants violated the FMLA, 29 U.S.C. § 2601, *et seq.*, when they failed "to convert [the plaintiff's] short-term disability to long-term disability," refused to allow the plaintiff to return to work after her emotional breakdown, and terminated her employment. Compl. ¶¶ 47-51. Finally, the plaintiff alleges that defendant May is liable for intentional infliction of emotional distress. The plaintiff has failed, however, to file any of these claims within the requisite statutes of limitations and has additionally failed to exhaust her administrative remedies with respect to her ADA claim. Accordingly, none of plaintiff's claims are viable and the Complaint must be dismissed.

#### A. The Plaintiff's ADA Claim is Time-Barred and Subject to Dismissal for Failure to Exhaust Administrative Remedies

The plaintiff alleges that the defendants intentionally discriminated and retaliated against her because of her disability, in violation of the ADA, when they refused to accommodate the plaintiff's request to work from home on her ABA book chapter and when they refused to submit this writing project to the ABA for publication in a timely manner. Compl. ¶ 44-46. The defendants argue, however, that the plaintiff's ADA claim should be dismissed for failure to abide by the ADA's administrative exhaustion requirement and the applicable statute of limitations. Defs.' Mot. Dismiss, at 6. In opposition, the plaintiff does not dispute that she failed to file a claim with the Equal Employment Opportunity Commission (hereinafter "EEOC") prior

to asserting her a claim in this Court[4] or that her time to file an EEOC claim has expired. Pl.'s Opp'n Mot. Dismiss, at 6. Nevertheless, the plaintiff seeks to excuse her failure to exhaust administrative remedies for her ADA claims on grounds that her "mental disability" entitles her to equitable tolling of the applicable statute of limitations and the administrative exhaustion requirement. *Id.* at 7. The Court disagrees.

The American with Disabilities Act forbids employers from discriminating against qualified employees on the basis of their disability.[5] 42 U.S.C. § 12112(a). Employers must make "reasonable accommodations" for disabled employees unless accommodation would impose an undue hardship on the operation of the business. 42 U.S.C. § 12112(b)(5)(A); *see also* 42 U.S.C. § 12111(9)-(10).

The ADA incorporates the "powers, remedies, and procedures" of Title VII, including the limitations period set forth in 42 U.S.C. § 2000e-5. 42 U.S.C. § 12117(a); *see also Stewart v. District of Columbia,* No. 04-cv-1444, 2006 WL 626921, at *3 (D.D.C. Mar. 12, 2006) (noting that the ADA incorporates the procedures and statute of limitations set out in Title VII claims). To maintain a cause of action under the ADA a plaintiff must first exhaust administrative remedies by filing a claim with the EEOC and then obtain a Notice of Right to Sue from the agency. *Marshall v. Fed. Express Corp.,* 130 F.3d 1095, 1098 (D.C. Cir. 1997) ("Before bringing suit in federal court, ADA plaintiffs, like those under Title VII, must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it."); *see also* 42 U.S.C. §§ 2000e-5(e)(1), (f)(1). In the District of Columbia, the plaintiff must file a complaint

---

[4] The plaintiff indicates that she filed an "internal grievance" with the AARP in October 2005, and later, in 2008, "attempted to first invoke her legal rights" but suffered a "relapse" and had to "abandon all efforts to vindicate her rights." Compl. ¶¶ 38, 43.

[5] A "qualified individual" entitled to protection from discrimination under the ADA must be able to perform, with or without reasonable accommodation, "the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

8

with the EEOC within 300 days of the alleged discriminatory action.[6] *Tucker v. Howard Univ. Hosp.*, No. 10-cv-756, 2011 WL 52863, at *3 (D.D.C. 2011); *Lee v. District of Columbia*, 733 F. Supp. 2d 156, 160 (D.D.C. 2010).

The administrative exhaustion requirement serves the dual purpose of notice to the employer and an opportunity to settle the dispute. *Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011) ("The purpose of the [administrative exhaustion] doctrine is to afford the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts.") (quoting *Wilson v. Peña*, 79 F.3d 154, 165 (D.C. Cir. 1996)). Thus, ordinarily receipt of a notice of right-to-sue letter is a condition precedent to the initiation of an ADA, Title VII or ADEA action in court. *See Williams v. Washington Metro. Area Transit Auth.*, 721 F.2d 1412, 1418 n.12 (D.C. Cir. 1983); *see also Tlush v. Manufacturers Res. Ctr.*, 315 F. Supp. 2d 650, 655 (E.D. Pa. 2002) (receipt of right-to-sue letter from the EEOC is a condition precedent to filing a Title VII or ADA claim); *Bondy v. Humana, Inc.*, No. 95-cv-456, 1996 U.S. Dist. LEXIS 10035, at *10 (D.D.C. May 29, 1996) (same). In this case, the plaintiff failed to file *any* complaint with the EEOC.

It is well-settled that filing a charge of discrimination under Title VII with the EEOC without complying with statutory time limits "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and

---

[6] Title VII requires the filing of discrimination complaints within 180-days of the alleged unlawful act, but allows 300 days to file a claim if the complainant "initially instituted proceedings with a State or local agency." 42 U.S.C. § 2000e–5 (e)(1). In the District of Columbia, the EEOC and the local agency tasked with investigating discrimination claims, the D.C. Office of Human Rights (hereinafter "D.C. OHR"), operate on a "work sharing agreement" whereby a claim filed with one agency is cross-filed with the other. *See Lee v. District of Columbia,* 733 F. Supp. 2d 156, 161(D.D.C. 2010) (finding that "charges filed with the EEOC are deemed simultaneously filed with the DCOHR"). Thus, even when a plaintiff does not file a claim with the D.C. OHR, a claim with the EEOC is automatically filed with the state agency. As a result, complainants in the District of Columbia, regardless of whether they file with D.C. OHR, are deemed to "initially institute[] proceedings with a State or local agency" and are afforded 300 days to file their complaints under 42 U.S.C. § 2000e–5(e)(1). *See Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 568-69 (D.C. 2007).

equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982); *see also Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (discussing untimely EEOC complaint); *Washington v. Washington Metropolitan Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998) (same). The defendants contend, however, that equitable defenses may be available to plaintiffs who file *untimely* EEOC complaints, but not to those who, like the plaintiff, have never filed with the EEOC. *See* Defs.' Reply, at 4 ("[Plaintiff] does not and cannot argue that one may file an ADA lawsuit without ever satisfying the charge-filing requirement."). Although the D.C. Circuit has not squarely addressed the issue of whether equitable defenses are available to plaintiffs who bypass the administrative filing requirement altogether, this Court concludes that they do.

The D.C. Circuit has made clear that "Title VII's exhaustion requirements are not jurisdictional." *Artis*, 630 F.3d at 1034 n. 4; *see also Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 527 (D.C. Cir. 2010) (stating that "neither Title VII nor the ADEA incorporates a jurisdictional exhaustion requirement."); *Porter v. Jackson*, 668 F. Supp. 2d 222, 230 n.6 (D.D.C. 2009) ("Exhaustion is not a jurisdictional requirement for Title VII claims."); *accord Kennedy v. Whitehurst,* 690 F.2d 951, 961 (D.C. Cir. 1982) (in ADEA context "exhaustion requirement is not jurisdictional in nature but rather [is] a statutory condition precedent to the instigation of litigation and [is] therefore subject to waiver, estoppel, and equitable tolling."). Similarly, other circuits have held that "the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement," thus making the failure to exhaust subject to equitable defenses. *Francis v. City of N.Y.,* 235 F.3d 763, 767-68 (2d Cir. 2000); *see also Gibson v. West*, 201 F.3d 990, 993 (7th Cir. 2000); *see also Boos v. Runyon,* 201 F.3d 178, 182-84 (2d. Cir. 2000)

(waiving administrative exhaustion requirement of Rehabilitation Act claim for reasons of judicial economy); *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1525 (11th Cir.1983) ("[A]ll Title VII procedural requirements to suit are henceforth to be viewed as conditions precedent to suit rather than as jurisdictional requirements."). In *Francis v. City of New York*, for example, the Second Circuit mentioned that it could be "logically possible that a total failure to present a particular claim to the EEOC raises a jurisdictional bar to bringing that claim in district court, even if presenting that claim to the EEOC in an untimely fashion does not constitute such a bar." 235 F.3d at 767. The Second Circuit concluded, however, the Title VII's procedural requirements are preconditions to bringing a case in federal court, stating that the Supreme Court's ruling in *Zipes* "strongly suggests that the non-jurisdictional status of timeliness requirements reflects the rule, not the exception." *Id.* at 567.

While failure to engage Title VII's administrative scheme does not automatically bar Title VII claims, failure properly to exhaust administrative remedies is an affirmative defense and the defendant bears the burden of proof. *Bowden*, 106 F.3d at 437; *Fennell v. AARP*, No. 09-1976, 2011 WL 899334, at *5 (D.D.C. Mar. 16, 2011) (citing *Bowden*, 106 F.3d at 437); *Fortune v. Holder,* No. 10-cv-856, 2011 WL 723111, at *3 (D.D.C. Mar. 2, 2011); *Pearsall v. Holder,* 610 F. Supp. 2d 87, 95 (D.D.C. 2009) (stating that the failure to exhaust administrative remedies is not jurisdictional, but an affirmative defense which must be raised by the defendant); *Howard v. Gutierrez*, No. 08-cv-0421, 2009 WL 536585, at *4 (D.D.C. Mar. 3, 2009) (same); *Walker v. Paulson,* No. 06-cv-1115, 2007 WL 1655879, at *2 (D.D.C. June 7, 2007) (same). Once a defendant has pleaded a failure either to exhaust administrative remedies or to comply with statutory time limits, the burden shifts to the plaintiff to make the case that dismissal is not warranted. *Bowden*, 106 F.3d at 437; *Fortune,* 2011 WL 723111, at *3; *see also Perry v. U.S.*

11

*Dep't of State*, 669 F. Supp. 2d. 60, 65 (D.D.C. 2009) (when it is "undisputed" that plaintiff failed to timely exhaust his administrative remedies, the plaintiff "bears the burden of pleading and proving equitable [defenses.]").

Application of equitable tolling is solely within the Court's discretion. *Fortune,* 2011 WL 723111, at *3 (citing *Smith–Haynie v. District of Columbia,* 155 F.3d 575, 579 (D.C. Cir. 1998)). The Court exercises its equitable power to toll the statute of limitations "only in extraordinary and carefully circumscribed instances." *Smith–Haynie,* 155 F.3d at 580 (quoting *Mondy v. Sec'y of the Army,* 845 F.2d 1051, 1057 (D.C. Cir. 1988)); *see also Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 152 (1984) (per curiam) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants"). Equitable tolling of the procedural requirements are to be applied sparingly and the "hurdle is high" for those seeking such relief. *Smith–Haynie,* 155 F.3d at 579; *Miller v. Rosenker*, 567 F. Supp. 2d 158, 161 (D.D.C. 2008).

Equitable tolling of statutes of limitations and exhaustion requirements may be warranted upon showing that the plaintiff was *non compos mentis*.[7] *Speiser v. U.S. Dep't of Health and Human Servs.*, 670 F.Supp. 380, 384 (D.D.C. 1986) (using D.C. CODE § 12-302 as a "touchstone" for *non compos mentis* standard because "the objective standard in the [state] statute would protect defendants against specious allegations of mental incompetence advanced in efforts to save time-barred claims."). To be *non compos mentis,* one must be "incapable of handling her own affairs or unable to function in society." *Smith-Haynie,* 155 F.3d at 580 (internal quotation omitted); *Perry*, 669 F. Supp. 2d at 66. Impaired judgment or general claims of mental illness is not enough to justify equitable relief from procedural requirements.

---

[7] *Non compos mentis* is a Latin phrase commonly translated as "not master of one's mind." BLACK'S LAW DICTIONARY, 1151 (9th ed. 2009).

*Speiser*, 670 F.Supp. at 385 ("While plaintiff clearly suffers from a legitimate mental illness, she has failed to demonstrate that it disabled her to the requisite degree."); *see also Gupta v. Northrop Grumman Corp.*, 462 F. Supp. 2d 56, 60 (D.D.C. 2006) (rejecting plaintiff's assertion that he was *non compos mentis* because no evidence supported his conclusory assertions of total incapacity); *Miller*, 578 F. Supp. 2d at 72 ("Suffering from a severe panic disorder and depression is not evidence of the type of total incapacity necessary to warrant equitable tolling."). An individual must show that she was "unable to engage in rational thought and deliberate decision making sufficient to pursue her claim alone or through counsel." *Smith–Haynie,* 155 F.3d at 580 (quoting *Nunnally v. MacCausland,* 996 F.2d 1, 5 (1st Cir. 1993) (per curiam)); *Perry,* 669 F. Supp. 2d at 66 ("Equitable tolling is only appropriate on *non compos mentis* grounds when a plaintiff 'is completely incapable of handling his affairs and legal rights." (internal citations and quotations omitted)). To make this determination, courts have often focused on whether the plaintiff was "ever adjudged incompetent, signed a power of attorney, had a guardian or caretaker appointed, or otherwise took measures to let someone else handle [plaintiff's] affairs . . . " *Speiser*, 670 F.Supp. at 385.

In this case, the Complaint alleges that the plaintiff suffered an emotional breakdown, which made her "unable to function," and caused her to "los[e] the ability to care for herself, such as bathing and other personal hygiene matters, cleaning or eating regularly." Compl. ¶ 31. The Complaint additionally states that the effects of plaintiff's PTSD "have continued more or less unabated to this day" and only since "approximately 2008 [has she] been able to function effectively so that she can care for herself, and leave her home and attempt to take care of her business affairs." *Id.* at ¶ 42. The plaintiff argues that "taking all well-pleaded facts as true . . . there is no evidence on record that [plaintiff] is not still totally disabled" and this entitles the

plaintiff to equitable tolling of the statute of limitations and exhaustion requirement. Pl.'s Opp'n. Defs.' Mot. Dismiss, at 6-7. This contention, however, is not tenable.

Plaintiff alleges that she was "unable to function" because of her emotional breakdown, but she simultaneously claims that during this time she attempted to work from home and completed a chapter for the ABA on senior citizen law. In fact, plaintiff's claim that she could complete "non-litigation tasks" and perform the tasks related to her employment serves as the basis for her claim that the defendants failed to accommodate her disability in violation of the ADA. *See* Compl. ¶ 46; *see also McFadden v. Ballard Spahr Andrews & Ingersoll, LLP,* 611 F.3d 1, 5 (D.C. Cir. 2010) (The ADA "prohibits an employer from discriminating against an individual with a disability who, with reasonable accommodation, can perform the essential functions of the job," quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 393 (2002)). Further contradicting the plaintiff's contention that she was "unable to function" as a result of her PTSD is that in early 2006, shortly after she was initially diagnosed with her mental disability, the plaintiff was able to overcome the alleged "disrupt(ions)" by defendant May to her "immigration to Canada," Compl. ¶ 41, and move to Canada, where she has lived ever since. *Id.* at ¶ 7. Thus, despite drawing all inferences from the plaintiff's Complaint in her favor, any conclusion that the plaintiff was *non compos mentis* is contradicted by the plaintiff's own pleadings. *Cf. Smith–Haynie,* 155 F.3d at 580 (An individual is *non compos mentis* when they are "unable to engage in rational thought and deliberate decision making sufficient to pursue her claim alone or through counsel."); *see also Kowal,* 16 F.3d at 1276 (court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.").

The plaintiff apparently recognizes that her mental condition does not qualify as *non compos mentis* because she does not assert in her Complaint or in her opposition to the instant

motion to dismiss that this is the basis for equitable tolling. The plaintiff, herself an experienced attorney, simply contends that she "was afflicted with a mental disability." Pl.'s Opp'n. Defs.' Mot. Dismiss, at 7. Even if the Complaint did not contradict the plaintiff's argument, the simple assertions that the plaintiff had a "mental disability," or was "unable to function" and "lost the ability to care for herself" are insufficient to demonstrate that plaintiff was *non compos mentis*. *See Perry*, 669 F. Supp. 2d at 67 (evidence of bipolar disorder, mood disorder, and/or post-traumatic stress disorder is not evidence that plaintiff was *non compos mentis*); *Miller*, 578 F. Supp. 2d at 71 ("Suffering from a severe panic disorder and depression is not evidence of the type of total incapacity necessary to warrant equitable tolling."); *Speiser*, 670 F.Supp. at 385 (equitable tolling not warranted when hospitalized plaintiff "brought forth evidence to the effect that she was preoccupied, depressed, and obsessed with the events surrounding her resignation, [but did not show] that she was ever adjudged incompetent, signed a power of attorney, had a guardian or caretaker appointed, or otherwise . . . let someone else handle her affairs . . . .").

In *Gupta v. Northrop Grumman Corporation,* for example, the Court dismissed plaintiff's ADA claims because plaintiff's statement that "he had a severe panic disorder and depression [did] nothing to establish the total incapacity he claim[ed]." 462 F. Supp. 2d at 60. Moreover, the court noted that once the defendant moved to dismiss plaintiff's claim, "the burden shifted to [the plaintiff] to submit evidence that establishes that he was incapable of handling his affairs," which he did not do. *Id.* As is the case here, the plaintiff in *Gupta* provided nothing to show that he was *non compos mentis* nor did the plaintiff supply "evidence of any kind in support of his conclusory assertions of total incapacity." *Id.* Although courts generally do not consider material outside the pleadings in the context of a Rule 12(b) motion, the court stated that "persuasive extra-pleading evidence might have created a genuine issue of material fact" and

15

"neither unsupported, unpled assertions of total disability, nor pled allegations of a panic disorder and depression are enough." *Id.*

The plaintiff's contention that she suffered from a mental disability is not enough to entitle her to equitable tolling. She must demonstrate that she was *non compos mentis*, a conclusion that is not plausible given the other factual allegations in the Complaint. Moreover, even if the Complaint did not contain allegations about plaintiff's legal writing activities and move to Canada that undermine any assertion that she was *non compos mentis*, the plaintiff must do more than state she was "unable to function." The plaintiff is therefore not entitled to equitable tolling of the ADA statute of limitations and exhaustion requirements. Accordingly, the plaintiff's ADA claim must be dismissed for failure to exhaust her administrative remedies and as time-barred.

### B. Plaintiff's FMLA and IIED Claims Are Time-Barred

In addition to her ADA claim, the plaintiff asserts a cause of action under the FMLA due to the defendants' refusal to allow the plaintiff to "convert her short-term disability to long-term disability, and by refusing to allow [the plaintiff] to return to work after her breakdown." Compl. ¶ 49. The plaintiff also, arguably, alleges that defendant May is liable for intentional infliction of emotional distress.[8] Like her ADA claim, plaintiff does not contest that both of these claims were filed outside the prescribed statutes of limitations.

Under the FMLA, an eligible employee[9] is entitled to take up to twelve weeks of medical leave during a 12-month period without suffering adverse employment action by her employer. 29 U.S.C. § 2612(a)(1). Employees returning from FMLA leave are to be restored to their

---

[8] *See supra* note 2.

[9] Generally, an eligible employee under the FMLA is one who has been employed for "at least 12 months by the employer," and "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A); *see also* 29 U.S.C. § 2611(2)(B) (exclusions to eligible employee designation).

16

original or equivalent position. 29 U.S.C. § 2614(a)(1). The FMLA prohibits employers from interfering or denying an employee's right to take FMLA leave and further prohibits employers from discharging or discriminating against employees who return from leave. 29 U.S.C. § 2615(a). An action under the FMLA must be brought within two years of the alleged violation and within three years if the violation is alleged to have been willful. 29 U.S.C. § 2617(c).

With regard to the plaintiff's intentional infliction of emotional distress claim, under District of Columbia common law, an IIED claim requires a showing of "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Khan v. Parsons Global Servs.,* 521 F.3d 421, 428 (D.C. Cir. 2008) (quoting *Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 139 (D.C. 2006)). An independent claim for IIED – one that is not intertwined with another tort claim – is subject to a three-year limitations period. *Rendall-Speranza v. Nassim,* 107 F.3d 913, 920 (D.C. Cir. 1997) (citing D.C. CODE § 12-301(8)).

Here, plaintiff alleges that she was scheduled to return to the AARP in October 2005 following a four-month transitional leave. Compl. ¶¶ 27-28. Before she returned to work, the plaintiff alleges that defendant May had his office manager threaten the plaintiff, which caused her to suffer an emotional breakdown. *Id.* at ¶ 29. A month later, in November 2005, the plaintiff sought psychiatric treatment and sought reasonable accommodation from the AARP, which then placed her on temporary disability. *Id.* at ¶¶ 30-36. The defendants assert that the plaintiff's twelve-week FMLA leave expired in March 2006, an expiration date which the plaintiff does not dispute. Defs.' Mot. Dismiss, at 4. Even assuming that the defendants' alleged FMLA violation was willful, the plaintiff was therefore required to file her claim by March 2009.

*See* 29 U.S.C. § 2617(c). The plaintiff, however, filed her claim on November 5, 2009, seven months after the statute of limitations had expired.[10]

Similarly, plaintiff's IIED claim was filed after expiration of the applicable statute of limitations. Drawing liberally from the plaintiff's Complaint, the acts which could form the basis for plaintiff's IIED claim against defendant May occurred in 2005, the last of which was the allegedly threatening phone call placed to the plaintiff at defendant May's direction in October 2005. *See* Compl. ¶¶ 2, 17, 21-26, 28-30; *see also* Pl.'s Opp'n Defs.' Mot. Dismiss, at 11 (citing to allegations of defendant's harassment during plaintiff's employment at AARP set forth in paragraphs 24-26 of the Complaint as the basis for plaintiff's IIED claim). Under the applicable three-year statute of limitations, timely filing of plaintiff's IIED claim was therefore in October 2008, over a year prior to the filing of the plaintiff's Complaint. *See Rendall-Speranza,* 107 F.3d at 920; D.C. CODE § 12-301(8) (stating that actions for which a limitation period is "not otherwise specifically prescribed" must be brought within three years).

The plaintiff filed both her FMLA and IIED claims outside the applicable statutes of limitations. As previously explained, the plaintiff is not entitled to equitable tolling of these statutes of limitations because the plaintiff has failed to demonstrate that she was *non compos mentis*. Accordingly, both plaintiff's FMLA and IIED claims are time-barred and must be dismissed.

---

[10] Even if the plaintiff had filed timely her FMLA claim, the claim would be dismissed on substantive grounds. The plaintiff's allegation that the AARP violated the FMLA by not "allowing" her to return to her job after her alleged breakdown is fatally undermined by her assertion that she was incapable of leaving her home, "unable to function," and "lost the ability to care for herself" until 2008. Compl. ¶¶ 31, 42; *see Jackson v. Wilkes-Artis*, 565 F. Supp. 2d 148, 152 (D.D.C. 2008) (dismissing plaintiff's FMLA claim because plaintiff failed to allege that she was able to return to her job at the conclusion of her FMLA leave).

## IV. CONCLUSION

For the reasons stated above, the Court finds that the plaintiff failed to assert her ADA, FMLA, and IIED claims within the applicable statutes of limitations. Accordingly, the Court grants the defendants' motion to dismiss the plaintiff's Complaint. An order consistent with this Memorandum Opinion will be entered.

**DATED: June 13, 2011**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge